UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH CHAFFIN,[1]

                                        Plaintiff,

            -vs-                                        12-CV-789C

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[2]

                                        Defendant.
_____

            Plaintiff Kenneth Chaffin initiated this action pursuant to Section 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of

Social Security (the "Commissioner") denying plaintiff's application for Social Security

Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI").   The

Commissioner has filed a motion for judgment on the pleadings pursuant to Rule 12© of

the Federal Rules of Civil Procedure (Item 7) and plaintiff has filed a cross motion

requesting the same relief (Item 9).  For the following reasons, the Commissioner's motion

is denied  and plaintiff's cross motion is granted.


## BACKGROUND

            Plaintiff was born on March 8, 1975 (Tr. 147 ).[3]  He applied for DIB and SSI benefits

---

[1]  Plaintiff is formerly known as "Kenneth Beaver."

[2]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former Commissioner Astrue as defendant in this
case and no further action need be taken.  *See* 42 U.S.C. § 405(g).

[3]  References preceded by "Tr." are to page numbers of the transcript of the administrative record,
filed by defendant as part of the answer to the complaint (Item 5).

on April 20, 2009, alleging disability as of February 18, 2009 due to mental impairments and an ankle injury (Tr. 168).  Plaintiff's application was denied on November 13, 2009 (Tr. 77-82).  Plaintiff then requested a hearing, which was held on February 9, 2011 before Administrative Law Judge ("ALJ") Scott Staller (Tr. 45-71).  Plaintiff testified at the hearing and was represented by counsel.

By decision dated March 9, 2011, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 12-24).  The ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review (Tr. 1-4).

Plaintiff then filed this action on August 20, 2012, pursuant to the judicial review provision of 42 U.S.C. § 405(g).  On March 6, 2013, the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 7).  Plaintiff cross-moved for judgment on the pleadings, arguing that the ALJ erred in not finding him disabled (Item 9).  The Commissioner filed a response on April 8, 2013 (Item 13), and plaintiff filed a reply on April 25, 2013 (Item 14).

## DISCUSSION

### I.  Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined

as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

**II.  Standard for Determining Eligibility for Disability Benefits**

To be eligible for DIB and/or SSI under the Social Security Act, plaintiff must show that he or she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets her burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpart P, App. 2 (the "Grids").[4] However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability (Tr. 14). Upon review of plaintiff's medical records and hearing testimony, the ALJ found plaintiff's impairments - personality disorder with obsessive compulsive disorder, anxiety disorder, polysubstance abuse, bipolar type 1 with psychotic features, eating disorder, and pain disorder post fracture of the left ankle - to be severe, but not of sufficient severity to meet or equal any of the impairments in the Listings (Tr. 15-16). The ALJ also determined that plaintiff's hypertension and asthma were not severe impairments because they had only a minimal effect on plaintiff's ability to perform basis work functions. *Id.;* 20 C.F.R. § 404.1521. The ALJ then determined that plaintiff could not perform any of his past relevant work as a school bus driver, sales attendant, hotel clerk, van driver, and deliverer (T. 22).

---

[4]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in substantial gainful work existing in the nation economy. *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

Proceeding to the fifth step of the sequential analysis, the ALJ relied upon the testimony of a vocational expert ("VE") and, considering the plaintiff's age, education, work experience, and residual functional capacity ("RFC"), found that the plaintiff could perform light work with some exertional restrictions and thus was capable of making a successful adjustment to other work that exists in significant numbers in the national and regional economy (Tr. 25).  Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time from the onset of his disability through the date of the decision (Tr. 24).

## III.  The Medical Record

In March 2009, plaintiff was seen by psychologist Dr. Frances Palin.  Dr. Palin diagnosed depression with psychotic features, eating disorder, anxiety, obsessive compulsive disorder, alcohol dependence, and chronic pain due to an ankle injury (Tr. 213-15).  In April 2009, plaintiff saw psychiatrist Jeffrey Jacobs.  Dr. Jacobs noted auditory hallucinations and suicidal ideations, and prescribed loxapine, cogentin, and celexa.  Plaintiff was directed to continue psychotherapy (Tr. 211-12).

On August 4, 2009, plaintiff was seen by consultative examiner ("CE") Dr. Kathleen Kelley.  The examination was unremarkable (Tr. 228-31).  Dr. Kelley noted plaintiff's prior ankle surgery and reports of persistent pain.  She stated that "repetitive activity of the left ankle will require comfort breaks." (Tr. 231).  Additionally, long standing and walking would require comfort breaks. *Id.*

On August 4, 2009, plaintiff was seen by CE Renee Baskin, Ph.D.  Dr. Baskin noted a diagnosis of depressive disorder, anxiety disorder, personality disorder with obsessive

6

compulsive features, polysubstance abuse reportedly in remission, ankle and heel pain, hypertension, and asthma (Tr. 238).  She stated that plaintiff would have minimal to no limitations in his ability to follow simple instructions, maintain attention, and perform simple tasks. *Id.*  He would have moderate limitations in his ability to make decisions, deal with stress, and interact with others.  *Id.*

On October 7, 2009, plaintiff began mental health treatment with Horizon Health Services (Tr. 249).  On October 16, 2009, plaintiff was evaluated by psychiatrist Richard Wolin.  Dr. Wolin diagnosed bipolar disorder with psychotic features, pain disorder, cocaine and alcohol dependence, generalized anxiety and panic symptoms, and orthopedic injury (Tr. 254).  Plaintiff was seen by social worker Chris Lunsford on October 7, 20, and 27, 2009 (Tr. 250-52).  On October 28, 2009, plaintiff was seen by Nurse Practitioner Christene Amabile.  Ms. Amabile completed an employability assessment and found that plaintiff was very limited in his ability to walk, stand, and climb, and moderately limited in his ability to lift, carry, push, pull, and bend (Tr. 257).  She further opined that all work activities were contraindicated until plaintiff's condition was stable (Tr. 258).

On November 12, 2009, state agency review psychiatrist Dr. Daniel Mangold completed a psychiatric review and mental residual functional capacity assessment.  Dr. Mangold determined that plaintiff's disorders did not meet or equal a listed impairment and that plaintiff was capable of performing "simple competitive work" (Tr. 282).

Plaintiff received inpatient treatment at Niagara Falls Memorial Medical Center from December 11 to December 16, 2009 following an episode of domestic violence (Tr. 337-44).  Upon his discharge, he was referred to outpatient mental health counseling with the Niagara County Department of Mental Health.  His treatment plan included psychotropic

7

medication and bi-weekly psychotherapy (Tr. 390).   The record reflects regular appointments with a social worker from January 2010 through January 2011 (Tr. 356-88). Progress notes indicate that plaintiff was generally anxious and/or depressed, yet oriented and coherent, with no hallucinations or delusions. *Id.*  In March 2010, plaintiff underwent surgery to have a plate and screws removed from his ankle (Tr. 333).   Additionally, in March 2010, plaintiff was evaluated by psychiatrist Dr. Esat Cirpili.   Dr. Cirpili noted a diagnosis of bipolar disorder, obsessive compulsive disorder, alcohol dependency, and recent surgery.   Plaintiff was depressed, but Dr. Cirpili described him as "future oriented and free of any suicidal ideation."  (Tr. 355).   By August 2010, plaintiff's bipolar symptoms were "partially under control."  (Tr. 352).   He was prescribed trazodone, lexapro, and trileptal. *Id.*

## IV.  Vocational Testimony

At the hearing, the ALJ took the testimony of Vocational Expert ("VE") James R. Newton.   Mr. Newton testified that plaintiff was unable to perform any of his past work activities (Tr. 67).   The ALJ presented a hypothetical situation in which a worker could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, could stand and/or walk for at least two hours in an eight-hour day, could sit for six hours, and could occasionally climb, balance, stoop, kneel, crouch, or crawl.   The hypothetical worker would be limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements.   Additionally, the work could require occasional decision-making, changes in the work setting, and brief, frequent, and superficial contact with the public and occasional contact with supervisors incidental to the work performed.   Finally,

8

the worker would be required to maintain attention and concentration for two-hour segments over an eight-hour work day and complete a normal work week without excessive interruptions from psychological or physical symptoms (Tr. 67). Given these hypothetical requirements, the VE testified that plaintiff could perform other work in the national or regional economy.  Specifically, the VE stated that plaintiff could perform  work as a table worker - DOT[5] number 734.687-014 - a light, unskilled position with 1,200 positions in the state economy; a garment sorter - DOT number 222.687-014 - a light, unskilled position with 1,300 positions in the state economy; and shirt presser - DOT number 363.685-026 - a light, unskilled position with 2,000 positions in the state economy (Tr. 69).

## V.  The ALJ's Reliance on Vocational Testimony

Plaintiff argues that the ALJ erred in relying on vocational testimony that conflicted with Social Security regulations and the DOT.   Specifically, he argues that the ALJ posed a hypothetical in which the worker could stand or walk for two hours in an eight-hour work day, which constitutes a sedentary RFC, but then found that plaintiff was only capable of performing jobs that are characterized as light work.  Plaintiff does not argue that the ALJ's RFC was incorrect or not supported by substantial evidence in the record.

It is well-established that the elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that

---

[5]  "DOT" refers to the United States Department of Labor's Dictionary of Occupational Titles.

plaintiff is capable of performing. *Bapp,*, 802 F.2d at 604–05; *Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983); *Dwyer v. Apfel*, 23 F.Supp.2d 223, 229–30 (N.D.N.Y. 1998) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1566, 416.966. Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental impairment of the claimant accepted as true by the ALJ. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability. *Varley*, 820 F.2d at 779.

Here, the ALJ set forth a hypothetical that accurately described plaintiff's RFC - the worker could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, could stand and/or walk for at least two hours in an eight-hour day, could sit for six hours, and could occasionally climb, balance, stoop, kneel, crouch, or crawl (Tr. 67). According to the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

*See* 20 C.F.R. § 404.1567(b). In contrast, a sedentary job is defined as one which involves sitting, although "a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

10

Here, the hypothetical presented by the ALJ contained criteria of both sedentary and light work, but clearly the hypothetical did not describe a worker who could perform the full range of light work.  The three jobs cited by the VE are classified as "light," but the VE failed to explain how the plaintiff could do those jobs given his exertional limitations.  The VE did not testify whether any of the jobs are performed primarily by sitting and by pulling or pushing arm or leg controls, or if those exertional limitations impacted the numbers of jobs available in the national or regional economies.  When vocational evidence provided by a VE is not consistent with information in the DOT, the ALJ must resolve the conflict before relying on the vocational evidence to support a determination that the individual is not disabled.  *See* Social Security Ruling 00-4p, 65 FR 75759-01 (S.S.A. 2000); *King v. Comm'r of Social Sec.,* 2013 WL 5567112, *2 (N.D.N.Y. Oct. 9, 2013).  In this case, the ALJ's failure to explain the apparent conflict between the exertional limitations in his hypothetical and the DOT descriptions of the "light" jobs suggested by the VE precludes reliance on the VE's opinion that plaintiff could do those jobs.  Accordingly, the court finds that the Commissioner failed to meet her burden to prove there is work in the economy that plaintiff is capable of performing.

Plaintiff further argues that the ALJ erred in relying on the vocational testimony in which it was opined that plaintiff could perform jobs requiring a reasoning level of 2.  The DOT defines reasoning level 2 as having the ability to "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions [and][d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, U .S. Department of Labor, Office of Administrative Law Judges, App. C (4th ed.1991).  Here, the ALJ concluded that plaintiff was limited to simple,

11

routine, and repetitive tasks and a work environment free of fast paced production requirements.   Plaintiff retained the RFC to make simple decisions with occasional changes in the work setting and maintain attention and concentration for two-hour segments in an eight-hour work day (Tr. 68).   This RFC assessment is not necessarily inconsistent with a reasoning level of 2.   "Working at reasoning level 2 does not contradict a mandate that work be simple, routine and repetitive."   *Edwards v. Astrue*, 2010 WL 3701776, at *15 (N.D.N.Y. Sept.16, 2010) (plaintiff could perform simple routine work at reasoning level 2 without significant public contact); *see also Fiozzo v. Barnhart,* 2011 WL 677297, *9 (W.D.N.Y. Jan. 19, 2011), *Report and Recommendation adopted by* 2011 WL 675415 (N.D.N.Y. Feb. 16, 2011) (RFC in which plaintiff could follow directions, make decisions, and adapt to changes in routine not inconsistent with reasoning level of 2); *Cross v. Astrue,* 2009 WL 3790177, *8 (N.D.N.Y. Nov. 12, 2009) (ALJ's determination that plaintiff's work must be simple, low-stress, and entry level, with no complex decision-making, no planning, scheduling or report-writing, no multi-tasking and little change in the work environment, and infrequent interaction with the public or co-workers was consistent with jobs identified with a GED of 2 or 3) .   Upon review of the record, there was no conflict between the VE's testimony and the DOT and the ALJ did not err in relying on this aspect of the VE's testimony.


## VI.  The ALJ's Consideration of Medical Opinions

        Plaintiff argues that the ALJ improperly evaluated the medical opinions of Nurse Practitioner Christene Amabile and Social Worker Chris Lunsford.  In his decision, the ALJ

stated that the opinions of Amabile and Lunsford were accorded "little weight" because neither is an "acceptable medical source" according to the regulations (Tr. 22). Additionally, the ALJ found that Mr. Lunsford's opinion "was not wholly consistent with the objective medical evidence of record." *Id.* The ALJ also found Ms. Amabile's opinion, that the plaintiff "has moderate to very limited physical restrictions," unsupported by the objective medical evidence of record. *Id.*

"Acceptable" medical sources are licensed physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). "Other" sources are ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d). "Other" source opinions, even when based on treatment and special knowledge of an individual, never enjoy controlling weight presumptions, nor can "other" source opinion be relied upon to establish the existence of a medically determinable impairment. *See* Social Security Ruling 06-03p, 2006 WL 2329939 (S.S.A. 2006).

When evaluating evidence from medical sources that are not considered "acceptable" under the Regulations, the ALJ can consider: (I) how long the source has known and how frequently the source has seen the individual; (ii) how consistent the opinion is with other evidence; (iii) the degree to which the source presents relevant evidence to support an opinion; (iv) how well the source explains the opinion; (v) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (vi) any other factors that tend to support or refute the opinion. *See* SSR 06–03p, at * 4-5. "Not every factor for weighing opinion evidence will apply in every case. The evaluation

of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case." *Id.,* at *5.

In this case, the ALJ noted that plaintiff began receiving mental health services from Horizon Health Services in October 2009. The opinion of Mr. Lunsford is dated October 27, 2009 and consists mainly of a list of diagnoses (TR. 249). The employability assessment by Ms. Amabile was conducted on October 28, 2009. The ALJ recognized that these "other sources" did not have a long-standing treatment relationship with plaintiff. Both providers offered largely conclusory statements, and the opinion of Ms. Amabile, in which she stated that all work activities were contraindicated until plaintiff was "stable" (Tr. 258), was inconsistent with the consultative evaluations of Drs. Mangold and Baskin.

Having reviewed the medical record and the administrative decision, the court finds that the ALJ properly evaluated the "other source" medical reports of Mr. Lunsford and Ms. Amabile consistent with the Social Security regulations and rulings. Additionally, the ALJ properly evaluated the other medical opinions, noting whether each doctor had a treating or examining relationship with the plaintiff and whether the medical opinions were consistent with the other evidence. Where it is clear that the ALJ properly applied the applicable regulations, it is not necessary that the ALJ methodically discuss each individual factor. *See Dombrowski v. Astrue,* 2013 WL 528456, *2 (N.D.N.Y. Feb. 11, 2013). Moreover, plaintiff points to no factor that would warrant weighing any opinion differently than the ALJ did in this case.

**<u>CONCLUSION</u>**

The Commissioner's motion for judgment on the pleadings (Item 7) is denied and the plaintiff's cross motion (Item 9) is granted.  Based on the ALJ's failure to resolve the conflict between the plaintiff's RFC and the VE's testimony that plaintiff could perform jobs classified as "light," the decision of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

So ordered.

<u>        \s\ John T. Curtin                 </u>
JOHN T. CURTIN
United States District Judge

Dated:   February    12       , 2014